IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TYHOWON H., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 21-cv-371 |
| v. ) | |
| ) | Magistrate Judge Keri L. Holleb Hotaling |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tyhowon H. ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for supplemental security income. The Parties have filed cross motions for summary judgment.[1] For the reasons detailed below, the Court grants Plaintiff's motion for summary judgment [Dkt. 20], denies the Commissioner's motion for summary judgment [Dkt. 26], and remands this matter for further proceedings consistent with this Order.

In this case, the Administrative Law Judge ("ALJ") issued an October 26, 2020 decision finding Plaintiff not disabled. [R. 15-39.] As part of that decision, the ALJ determined Plaintiff did not meet the requirements of Listing 12.04 for depressive, bipolar, and related disorders. [R. 28-30.] Plaintiff argues this finding was incorrect – that he meets the Listing due to episodic deterioration of his mental stability consistent with Listing 12.04.

The Listings detail impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age,

---

[1] Plaintiff has filed a Memorandum in Support of Summary Remand [Dkt. 20], which the Court construes as a motion for summary judgment.

education, or work experience." 20 C.F.R. § 404.1525(a); *see also*, 20 C.F.R. § 404.1529(d)(3). The Listings describe impairments so severe they are "presumptively disabling." *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999); *Craft v. Astrue,* 539 F.3d 668, 674 (7th Cir. 2008) ("If a limitation is of Listings-level severity, then the claimant is conclusively disabled."). Thus, a claimant will be found disabled if his impairment "meets or equals an impairment found in the Listing of Impairments." *Maggard*, 167 F.3d at 379 (citations omitted). It is the claimant's burden to not only present medical findings that match or equal a Listing, but to show his impairments satisfy all the various criteria specified in that Listing. *Id.* at 380. To meet a Listing is a "very high bar." *Garza v. Kijakazi*, 2022 WL 378663, at *2 (7th Cir. Feb. 8, 2022). Nonetheless, an ALJ must "build an accurate and logical bridge" between the evidence and her conclusion regarding that Listing. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

Under the version of Listing 12.04 in place at the time of the ALJ's decision, Plaintiff first must show "medical documentation" of a depressive or bipolar disorder, 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04(A), which is not in dispute here. [Dkt. 27, p. 2.] Second, Plaintiff must satisfy either the Paragraph B or Paragraph C criteria. *Id.* at §12.04(B)-(C). Plaintiff argues he satisfies Paragraph C, which is met if he shows his mental disorder is "serious and persistent" and "there is evidence of both":

> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder…; and
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life….

*Id*. at §12.04(C).

A mental disorder is "serious and persistent" if there is a "medically documented history of the existence of the disorder over a period of at least 2 years…." *Id*. "'Marginal adjustment' means that [the claimant's] adaptation to the requirements of daily life is fragile…." *Id*. at §12.00(G)(2)(c).

2

The marginal adjustment requirement is satisfied when "the evidence shows that changes or increased demands have led to exacerbation of [the claimant's] symptoms and signs and to deterioration in [their] functioning…." *Id*. Per the regulation itself, examples of the requisite deterioration include the need for "a significant change in medication or other treatment" and evidence of "*episodes* of deterioration that have required [the claimant] to be hospitalized or absent from work, making it difficult for [them] to sustain work activity over time." *Id*. (emphasis added).

Plaintiff asserts he meets this Listing because although he has periods of relative stability/functioning, he is only marginally adjusted *during* his episodes of decompensation, which satisfies Paragraph C2 of Listing 12.04. As Plaintiff argues, the Listing's "marginal adjustment" criterion explicitly contemplates fluctuating signs and symptoms; indeed, episodic symptoms are the hallmark of the criterion. [Dkt. 30, p. 2 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00(G)(2)(c)).] The Court can find no case law addressing the issue of whether a Plaintiff who has periods of relative stability/functioning interspersed with episodes of marginal adjustment during decompensation satisfies Paragraph C2. However, Plaintiff correctly observes that the Listing does not require that the severity of signs and symptoms present during an episode of deterioration persist throughout the entire period at issue, as the ALJ implies.

Plaintiff alleges the following medical history evinces episodes of deterioration (two requiring inpatient hospitalization) stemming from changes in life events, that demonstrate it would be difficult for him to sustain work activity over time. Plaintiff was only 17 years old as of his alleged onset date of October 23, 2018. [R. 88.] He graduated high school in special education classes due to a specific learning disability, and has never worked. [R. 204, 297, 771, 783-84, 786, 791.] Plaintiff has been variably diagnosed with a major depressive disorder, a bipolar disorder, PTSD, and mild intellectual disability. [R. 413, 892, 970, 1097.] When his depressive symptoms increase, Plaintiff complains of being depressed, overwhelmed, irritable, and anxious and reports difficulty sleeping, difficulty

3

concentrating, racing thoughts, mood swings, social isolation, low motivation, hallucinations, excessive guilt, anger, loss of interest, loss of control, and agitation. [R. 408, 814, 819, 969, 970, 1137.] Plaintiff's symptoms, particularly his suicidal and homicidal ideations, have fluctuated, resulting in increases in medication, and admissions to an intensive outpatient program (an "IOP") focusing on psychiatric care. Specifically, in October 2018, Plaintiff presented to the emergency room with worsening depressive symptoms, suicidal thoughts, and self-harming behavior. [R. 400, 406, 409.] He had recently ended a relationship with a girlfriend. [R. 403.] He had been caught cutting his arms in school and the school social worker recommended to his mother he get mental health treatment. [R. 405.] At the hospital, Plaintiff admitted he had been battling depression and "fleeting but persistent thoughts of suicide" for years as a result of a series of deaths among his family and friends. [R. 401, 406.] He revealed he had started cutting himself in late 2017 or early 2018. [R. 409.] He also reported attempting suicide by cutting in 2017, which he told no one about at the time. [R. 401, 409.] The hospital discharged Plaintiff to an IOP because he was suffering an "increase in symptoms requiring intervention to prevent exacerbation or need for more restrictive level of care." [R. 413.] At the IOP, Plaintiff started seeing a psychiatrist, taking medication, and attending group therapy. [R. 345, 400.] In July 2019, Plaintiff reported an increase in passive suicidal ideation to his psychiatric nurse, as well as feeling sad, angry, frustrated, worried, and helpless for one-to-two weeks straight. [R. 969.] He again reported an increase in depression and recent homicidal ideation to his psychiatric nurse in September 2019, and his medication was increased (doubled, in fact). [R. 970.] By early December 2019, Plaintiff was again having suicidal thoughts after he started having intermittent auditory hallucinations and sleep paralysis; his medications were again increased. [R. 972.] After a brief 2-week period of stabilization and improvement, his depressive symptoms increased again to the point that he developed a plan to commit suicide by overdose, and was admitted to inpatient psychiatric care on December 16, 2019. [R. 971, 1050.] Following that admission,

Plaintiff was admitted to another IOP that lasted until February 2020. [R. 891, 962.]

The Commissioner asserts there is more of a "back and forth" trajectory to Plaintiff's mental health history than Plaintiff presents. The Commissioner points out that the record consistently showed complaints of sadness and depressed mood, but also reflected good mood, normal thought processes, and improvement with treatment. [R. 32-33; *comparing* R. 970 (continued depression), R. 971 (mood swings and racing thoughts), R. 984 (sadness and depressed mood) *with* R. 814 (good mood, many normal mental status findings), R. 891 (intact fund of information, good recall), R. 971 (overall doing much better), R. 973 (doing much better).] The Commissioner notes the ALJ observed that Plaintiff cared for his own personal needs and grooming, though his mother assisted with reminders to take his medications. [R. 31.] Plaintiff testified that he used a smartphone, played games, interacted on social media, and maintained friendships, but at the same time did not venture out of the house alone or use public transportation by himself. [R. 32.] Plaintiff prepared his own meals, took out the garbage, shopped with his mother, enjoyed video games and socializing with others, and could count change. [R. 31.][2]

While the Commissioner makes much of the up-and-down/back and forth trajectory of Plaintiff's mental health history, the Commissioner does not directly address the argument the ALJ erred in assessing Plaintiff's marginal adjustment levels solely outside his episodes of deterioration. However, this varying trajectory of Plaintiff's mental health appears to be the type of fluctuations discussed by the Seventh Circuit as potentially disabling: "[a] person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days…[s]uppose that half the time she is well enough that she could

---

[2] Plaintiff does not dispute he is capable of performing these activities *between episodes of deterioration*. [Dkt. 30, p. 2 (emphasis in original).] Rather, Plaintiff argues that despite the relative stability and brief periods of improvement between his episodes of deterioration, he still deteriorates when confronted with changes or increased stressors, which neither the ALJ nor the Commissioner disputes, and which is all, he contends, the Listing requires. *Id*.

5

work, and half the time she is not. Then she could not hold down a full-time job." *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) (citations omitted). Per the Court's plain reading of Paragraph C2 of Listing 12.04, the ALJ was required to discuss whether there is evidence of marginal adjustment *during* episodes of deterioration caused by changes or increases in stressors leading to exacerbation of Plaintiff's symptoms and signs and to deterioration in his functioning such that his adaptation to the requirements of daily life qualified as fragile during an episode. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 (C) and §12.00(G)(2)(c). The ALJ did not do so.

Moreover, the entirety of the ALJ's Paragraph C "analysis" consists of the following three sentences, whereby the ALJ summarily dismissed the possibility that Plaintiff satisfied any of the Paragraph C criteria:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes his environment or to demands that are not already part of his daily life.

[R. 30.] On its face, this discussion of the Paragraph C criteria by the ALJ offers no analysis of the marginal adjustment criterion as they pertain to Plaintiff, let alone how the Paragraph C requirements are not met with Plaintiff's periods of hospitalization, IOP treatment, and his rather supportive/structured home environment. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) ("In considering whether a claimant's condition meets or equals a Listed impairment, an ALJ must discuss the Listing by name and offer more than a perfunctory analysis of the Listing."). The aforementioned requirement that an ALJ build an accurate and logical bridge between the evidence and her conclusion is designed to ensure meaningful review of the ALJ's decision by the district court; "[i]f a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (quoting *Steele*, 290 F.3d at 940). Without this analysis, the ALJ's discussion of Paragraph C is too perfunctory to be sufficient for the

Court to conduct a meaningful review and, thus, the Court cannot say the ALJ built an accurate and logical bridge between the evidence and her Paragraph C conclusion. *Steele*, 290 F.3d at 941. As a result, a remand is necessary so the ALJ may revisit her step-three finding and sufficiently analyze the Paragraph C criteria of the mental health Listings – in particular, the marginal adjustment criterion, with a special emphasis on Plaintiff's functioning during his episodes of deterioration.

Therefore, the Court must reverse and remand for proceedings consistent with this Order. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Plaintiff's motion for summary judgment [Dkt. 20] is GRANTED, and the Commissioner's motion for summary judgment [Dkt. 26] is DENIED.

ENTERED: October 11, 2023

_____
Hon. Keri L. Holleb Hotaling,
United States Magistrate